IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| WALTER DEANDRE BRUCE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:19-cv-00726-O-BP |
| | § | |
| ANDREW M. SAUL, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Walter Deandre Bruce ("Bruce") filed this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the denial by the Commissioner of Social Security ("Commissioner") of his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). ECF No. 1; Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 14-1 at 160. After considering the pleadings, briefs, and the administrative record, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision.

**I.     STATEMENT OF THE CASE**

Bruce was born on May 9, 1985 and has at least a high school education. Tr. 28. He filed for DIB on January 18, 2017, alleging that his disability began on October 1, 2015. Tr. 160; ECF No. 16 at 7. On the alleged disability date, he was 30 years old, which is defined as a younger individual. Tr. 28. The Commissioner initially denied his claims on April 19, 2017 and denied them again upon reconsideration on August 15, 2017. Tr. 160. Bruce requested a hearing, which was held before Administrative Law Judge ("ALJ") Darren Hamner on June 6, 2018 in Fort Worth,

Texas. Tr. 79, 160; ECF No. 16 at 7. At the hearing, Bruce, through his attorney, amended the alleged onset date to January 1, 2017. Tr. 160. The ALJ issued an unfavorable decision on August 13, 2018, finding that based on the application for DIB, Bruce was not disabled. Tr. 171.

In the decision, the ALJ employed the statutory five-step analysis and established during step one that Bruce had not engaged in substantial gainful activity since January 1, 2017. Tr. 163. At step two, the ALJ determined that Bruce had the severe impairments of lumbar strain, left shoulder pain, mild hallux valgus and degeneration of first metatarsophalangeal of left foot, obesity, an affective disorder, post-traumatic stress disorder, insomnia, and alcohol dependence. *Id.* He found that Bruce had mild limitations in understanding, remembering, or applying information and in adapting or managing oneself. Tr. 164. He found that Bruce had moderate limitations in concentrating, persisting, or maintaining pace and in interacting with others. *Id.* At step three, the ALJ found that Bruce's impairments did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 163. He found that Bruce had

> the residual functional capacity to perform light work as defined in [20 C.F.R. § 404.1567(b)] as follows: He is able to lift and carry 20 pounds occasionally and 10 pounds frequently. He is able to stand and walk for 6 hours in an 8-hour day and sit for 6 hours in an 8-hour workday but would need to alternate sitting and standing every hour for a few minutes at a time. He is able to balance, stoop, kneel, crouch, crawl, and climb ramps and stairs occasionally, but should never climb ropes, ladders, or scaffolds. He is able to perform occasional overhead reaching. He is able to perform simple job tasks, defined as routine, repetitive tasks with little variation in duties and involving only simple judgment making. He is limited to occasional public contact and occasional interaction with coworkers and supervisors.

Tr. 165. At step four, the ALJ found that Bruce was unable to perform any past relevant work. Tr. 170. At step five, the ALJ found that jobs that Bruce could perform existed in significant numbers in the national economy, so a finding of "not disabled" was appropriate. Tr. 171. On October 18, 2018, the Appeals Council remanded the ALJ's decision, holding that the ALJ should have

discussed and evaluated the weight afforded to Bruce's Department of Veterans Affairs disability rating ("VA rating"). Tr. 179–80.

On April 18, 2019, the ALJ held another hearing in Fort Worth, Texas. Tr. 36. On July 15, 2019, he again found that Bruce was not disabled. Tr. 29. The ALJ employed the statutory five-step analysis and established during step one that Bruce had not engaged in substantial gainful activity since October 1, 2015. Tr. 18. At step two, the ALJ determined that Bruce had the severe impairments of lumbar strain, intermittent left shoulder pain, obesity, migraine headaches, obstructive sleep apnea, mood disorder, generalized anxiety disorder, post-traumatic stress disorder, and alcohol use disorder. *Id.* He found that Bruce had mild limitations in understanding, remembering, or applying information and in adapting or managing himself. Tr. 19–20. He found that Bruce had moderate limitations in concentrating, persisting, or maintaining pace and in interacting with others. *Id.* At step three, the ALJ found that Bruce's impairments did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 18. He found that Bruce had

> the residual functional capacity to perform a range of light work as defined in [20 C.F.R. § 404.1567(b)] as follows: He is able to lift and carry 20 pounds occasionally and 10 pounds frequently. He is able to stand and walk for 6 hours in an 8-hour day and sit for 6 hours in an 8-hour workday. He is able to balance, stoop, kneel, crouch, crawl, and climb ramps and stairs occasionally, but should never climb ropes, ladders, or scaffolds. He is able to perform occasional overhead reaching. He is able to perform detailed, but not complex, job tasks. He can have occasional interaction with coworkers, supervisors, and the general public. He should not perform occupations involving fast-paced production line work or commercial driving, and he should not work where alcohol is served or manufactured.

Tr. 21. At step four, the ALJ found that Bruce was unable to perform any past relevant work. Tr. 27. At step five, the ALJ found that jobs that Bruce could perform existed in significant numbers in the national economy, so a finding of "not disabled" was appropriate. Tr. 29.

The Appeals Council denied review on August 29, 2019. Tr. 1. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II. STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. § 404 (2020). The SSA defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A) (2020); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be engaged in any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 404.1572(a)–(b)). Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *see Stone v. Heckler*, 752 F.2d 1099, 1100–03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, the impairments must prevent the claimant from returning to past relevant work. *Id.* § 404.1520(a)(4)(iv). Before this step, the ALJ assesses

the claimant's residual functional capacity ("RFC"), which is "the most [a claimant] can still do despite [the claimant's] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1). Fifth, impairments must prevent the claimant from doing any work after considering the claimant's RFC, age, education, and work experience. *Crowley*, 197 F.3d at 197–98; 20 C.F.R. § 404.1520(a)(4)(v).

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing [he or] she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

The Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (internal quotation marks omitted) (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Id.*; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and

not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (internal punctuation omitted) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

### III. ANALYSIS

Bruce raises two issues on appeal. He claims that the ALJ (1) did not offer a valid reason for rejecting the VA rating and (2) erroneously rejected Dr. Pandya's opinion. ECF No. 16 at 10, 14.

**A. The ALJ offered a valid reason for rejecting the VA rating.**

Bruce argues that the ALJ must give great weight to a VA rating if it lists specific evidence that the VA relied on in making the determination, and the examinations underlying that determination are in the record. ECF No. 16 at 10–11. He asserts that the record before the ALJ includes examinations indicating a 20 percent rating on Bruce's left shoulder, an abnormal range of motion in his back, and a 50 percent rating for PTSD, along with a letter stating that Bruce had a 70 percent rating for PTSD and depression. *Id.* at 11–12. Further, he contends that the ALJ may not give diminished weight to the VA rating because he was incorrect in finding that the rating lacks references to "specific work activities, functional limitations, signs, symptoms, findings, or impairments." *Id.* at 13.

The Commissioner argues that the VA rating is not binding because the Department of Veterans Affairs and the Social Security Administration use different criteria to evaluate disabilities, but the ALJ must consider it. ECF No. 19 at 3. He argues further that the ALJ properly explained why he gave little weight to the VA rating. *Id.* at 4–5 (citing *Ayala v. Saul*, No. 4:19-cv-00146-P-BP, 2020 WL 746625, at *3 (N.D. Tex. Feb. 14, 2020)). Additionally, he contends that a VA rating of 100 percent does not equate to substantial evidence of severe impairment. *See id.* at 5 (citing *Garcia v. Berryhill*, 880 F.3d 700, 705 (5th Cir. 2018)).

In his reply, Bruce emphasizes *Beach v. Colvin*, in which the court rejected the Commissioner's argument that "the VA disability rating . . . 'provides no indication of the evidence that allegedly supported the rating, no discussion of work-related limitations, and no evaluation of jobs [Plaintiff] could or could not do.'" ECF No. 20 at 1 (quoting *Beach v. Colvin*, No. 6:14-cv-023-BL, 2016 WL 1178954, at *7 (N.D. Tex. Feb. 25, 2016), *rec. adopted*, No. 6:14-cv-023-C, 2016 WL 1248909 (N.D. Tex. Mar. 25, 2016)). He further argues that the Commissioner's reliance on *Ayala v. Saul* is misplaced because the ALJ in that case "noted that the evidence at the hearing did not support the level of functional limitation that Ayala alleged," but here, the ALJ has not expressly made such a finding as to Bruce. *Id.* at 2; *see* ECF No. 19 at 4–5 (citing *Ayala*, 2020 WL 746625, at *3 ) (internal quotation marks omitted). Courts "may affirm only on the grounds that the Commissioner stated for his decision." ECF No. 20 at 2 (quoting *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014)) (internal quotation marks omitted). Finally, Bruce argues that *Garcia v. Berryhill*, which the Commissioner relies on, does not apply here because it concerns the ALJ's step two analysis, and Bruce does not contend that the ALJ erred at step two. *Id.* (citing *Garcia v. Berryhill*, 880 F.3d 700 (5th Cir. 2018)).

Though a VA rating is not legally binding on the Social Security Administration because the criteria applied by the two agencies are different, the rating generally is entitled to great weight, and the ALJ must consider it in his decision. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). "ALJs need not give 'great weight' to a VA disability determination if they adequately explain the valid reasons for not doing so." *Id.* "An ALJ's disagreement with the VA's finding of disability is not reversible error if the record reflects consideration of that finding." *Duke v. Colvin*, No. 5:16-cv-151-DAE, 2016 WL 6651394, at *5 (W.D. Tex. Nov. 10, 2016).

Here, the ALJ explained valid reasons for not giving great weight to the VA disability rating, and the record shows that he considered the rating. He explained that he gave very little weight to the VA ratings that Bruce was 100 percent service-connected unemployable as of March 7, 2019, and 90 percent disabled. Tr. 26. He adequately gave valid reasons for making this decision, noting that "[t]he disability ratings appear in notations within the claimant's file, and there is no indication of any doctors stating the opinions;" the VA disability criteria differ from the Social Security Administration criteria; and "there is no reference to specific work activities, functional limitations, signs, symptoms, findings, or impairments." *Id.* Further, the record shows that the ALJ considered the VA's finding of disability, so any error would be harmless. *See* Tr. 26–27 (discussion of VA rating). Because the ALJ explained why he did not give great weight to the VA disability rating, and the record shows that the ALJ considered the VA's disability rating, reversal on Bruce's first ground for appeal is not warranted.

**B. The ALJ properly considered Dr. Pandya's opinion.**

Bruce argues that the ALJ must cite competing first-hand medical evidence when rejecting the opinion of a treating physician, such as Dr. Pandya, and he failed to do so. ECF No. 16 at 14–15. Bruce contends further that the 100 percent VA rating increases the credibility of Dr. Pandya's opinion. *Id.*

In response, the Commissioner argues that although a treating physician's opinion generally should be given considerable weight and is controlling if well-supported by evidence, the ALJ may assign little weight to any doctor's opinion for good cause. ECF No. 19 at 6–7. The ALJ stated that Dr. Pandya's opinion was conclusory, inconsistent with other findings in the record, and did not discuss the activities that Bruce can perform. *Id.* at 7. Additionally, the Commissioner contends that the mental impairment questionnaires were mere checklists, which

alone is sufficient reason for the ALJ to assign limited probative weight to the opinion. *Id.* at 8. He asserts that the opinions of the state agency physicians and the medical expert provide substantial evidence to support the ALJ's discounting of Dr. Pandya's opinion. *Id.* He also argues that Dr. Pandya's May 24, 2018 statement is not a medical opinion under 20 C.F.R. § 404.1527(d) because it concludes that Bruce's impairments prevent him from working. *Id.* at 10.

The Social Security Administration states that it "will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2) (2019). An ALJ should give a treating physician's opinion "great weight" in determining disability, but if good cause is shown, the ALJ may give the opinion little or no weight. *Rollins v. Astrue*, 464 F. App'x 353, 355 (5th Cir. 2012). "Good cause" exceptions include "disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Perez v. Barnhart*, 415 F.3d 457, 466 (5th Cir. 2005) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994)) (internal quotation marks omitted). If a treating physician's opinion consists of a mere checklist and is not accompanied by any contemporaneously recorded, medically acceptable findings, it is entitled to little weight on that basis alone. *Brown v. Astrue*, No. 11-2919, 2013 WL 620269, at *6 (E.D. La. Jan. 18, 2013) (citing *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980)). "District courts in the Fifth Circuit have found that an ALJ's determination that a doctor's opinions were not credible was supported when the physician completed a checklist form without any narrative citations to clinical findings . . . ." *Haynes v. Astrue*, No. 11-2289, 2012 WL 3860467, at *16 (E.D. La. July 23, 2012).

Here, Dr. Pandya, a treating physician, offered two checklist opinions that include brief comments but no narrative citations to clinical findings. Tr. 1742–45, 2231–34. He also authored

9

a four-sentence statement noting Bruce's diagnoses of PTSD, depression, and alcohol use disorder. Tr. 1964. Because Dr. Pandya's checklist opinions did not include contemporaneously recorded, medically acceptable findings or narrative citations to clinical findings, the ALJ was not required to give them great weight or controlling weight and may properly give them little weight. *See* Tr. 1742–45, 2231–34. Further, as the ALJ noted, Dr. Pandya's statement noting Bruce's diagnoses was conclusory and did not include supporting evidence, so he did not err in giving little weight to that statement. *See* Tr. 26, 1964.

Before an ALJ determines that a treating physician's opinion is not entitled to "controlling weight," he must consider six factors:

> (1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the consistency of the opinion with the record as a whole, and (6) the specialization of the treating physician.

*Newton*, 209 F.3d at 456 (citing 20 C.F.R. § 404.1527). Even if the ALJ does not explicitly address each factor, however, any error would be harmless so long as the record contains all of the information required for the factors that the ALJ did not address. *See Rollins*, 464 F. App'x at 358. Further, "[t]he Fifth Circuit has held that ALJs are not required to consider the § 404.1527(c) factors before dismissing a treating physician's opinion if there is competing first-hand medical evidence contradicting that opinion." *Brooks v. Comm'r of Soc. Sec.*, No. 15-2280, 2016 WL 6436791, at *8 (W.D. La. Sept. 26, 2016).

Here, the ALJ did not explicitly address the six factors, but the record contains all of the information required for the factors. The mental impairment questionnaires state that Dr. Pandya has been treating Bruce since May or June 2016. Tr. 1742, 2231. The questionnaires and a letter from the Tarrant County Vet Center include some information about the frequency of examination

10

and the nature and extent of the treatment relationship. Tr. 1735, 1742–45, 2231–34. The ALJ discussed the ways in which the medical evidence does not support Dr. Pandya's opinion and the inconsistencies between his opinion and the record as a whole. Tr. 21–26. Finally, as stated in the Tarrant County Vet Center letter, Dr. Pandya specializes in psychiatry. Tr. 1735. Because the record includes all of the information required for the ALJ to assess the six factors, any error in not specifically addressing the factors is harmless on this record. Accordingly, the Court may not reverse the ALJ's decision based on his treatment of Dr. Pandya's opinions.

## IV.   CONCLUSION

Because the ALJ employed the correct legal standards, substantial evidence in the record supports his decision, and Bruce has failed to show that reversal of the decision is required, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d

1415, 1417 (5th Cir. 1996) (en banc).

    Signed on June 3, 2020.

                                                                  _____
                                                                  Hal R. Ray, Jr.
                                                                  UNITED STATES MAGISTRATE JUDGE